IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH C., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 24-cv-131 |
| FRANK BISIGNANO, | : | |
| *Commissioner of Social Security*, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW** **August 27, 2026**
**United States Magistrate Judge**

Joseph C. ("Plaintiff") seeks review of the Commissioner's decision denying his application for Disability Insurance Benefits (DIB). The parties consented to proceed before a Magistrate Judge,[1] and the matter was assigned to me. For the following reasons, I deny Plaintiff's request for review and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB under the Social Security Act ("SSA") on May 18, 2021, alleging disability beginning April 23, 2021. R. 30, 60, 62, 93, 112. The claim was denied initially on January 31, 2022, and again on reconsideration. R. 30, 95, 113, 115. Plaintiff subsequently filed a request for a hearing. Id. at 119, 137, 152. On November 8, 2022, a video conference hearing took place because of the COVID-19 Pandemic before Administrative Law Judge ("ALJ") Elana Hollo. Id. at 30, 52, 54. Plaintiff appeared at the hearing by phone with his

[1] See Doc. 4; 28 U.S.C. § 636(c)(1) & Fed. R. Civ. P. 73.

counsel Alan Babbitt. Id. at 54. Vocational Expert ("VE") Carmine Abraham testified at the hearing. Id. at 54, 73-81.

The ALJ issued a decision denying benefits on January 27, 2023. Id. at 30-45. Plaintiff filed a request to review the ALJ's decision with the Appeals Council, which was denied by letter dated November 13, 2023. Id. at 1. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. R. 2-3; 20 C.F.R. § 404.981. Plaintiff's counsel then initiated this action in federal court. Doc. 1. Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. Doc. 8. Defendant filed a Response to the Request for Review of Plaintiff. Doc. 9. Plaintiff filed a Reply Brief. Doc. 12.

## II. LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings,"), see 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity (RFC) to perform their past work; and

> 5. If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) (citation omitted).

Generally, the court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)). It is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431). The Court has plenary review of all legal issues. See Schaudeck, 181 F.3d at 431; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983) (stating even if substantial evidence supports factual findings Court may review whether decision was "made upon correct legal standards.") (citation omitted).

## III. ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Plaintiff met the insured status requirements of the SSA through December 31, 2025. R. 32. Additionally, Plaintiff had not engaged in any substantial gainful employment since April 23, 2021, the AOD. Id. at 33. The ALJ noted Plaintiff has several severe impairments including asthma, degenerative disc disease of the spine, mild carpal tunnel syndrome of the left upper extremity, and rotator cuff syndrome of the right upper extremity. Id. at 33; 20 C.F.R. § 404.1520(c). The ALJ decided Plaintiff's mental impairment of anxiety was not severe.[2] R. 33. Because Plaintiff only had mild limitations or no limitations in the four areas of mental functioning, she determined the Paragraph B criteria had not been met. Id. at 33-35. Moreover, the ALJ decided that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the applicable Listings.[3] Id. at 35; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Considering the entire record, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could not frequently climb ramps or stairs, could never climb ladders, ropes, or scaffolds, and could never kneel or crawl. R. 36. Plaintiff could occasionally stoop and frequently crouch. Id. Regarding the right upper extremity, he could not reach overhead, could occasionally reach in all other planes, could occasionally handle,

[2] In addition, Plaintiff's obstructive sleep apnea caused no more than minimal limitations to his ability to perform basic work tasks, so it was not severe. Id. at 33. The ALJ also found Plaintiff's obesity was not severe since it did not impose any significant limitations or cause notable exacerbation of his other impairments. Id. Plaintiff's irritable bowel syndrome was medically non-determinable. Id. at 35.

[3] The ALJ discussed Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (abnormality of a major joint(s) in any extremity), and 3.03 (asthma), but found Plaintiff's impairments did not meet the required severity of the Listings. Id. at 35-36.

finger, and feel, and could occasionally push and pull. Id. As to the left upper extremity, Plaintiff could frequently push and pull. Id. He could not use foot control operations with the right lower extremity and could only occasionally use foot control operations with the lower extremity. Id. Plaintiff had to avoid concentrated exposure to extreme heat or cold, wetness or humidity, vibrations, irritants such as fumes, odors, dust and gases, as well as poorly ventilated areas and exposure to chemicals, driving vehicles, unprotected heights and moving machinery. Id. The ALJ determined Plaintiff was unable to perform any of his past relevant work as a composite job comprised of a garbage collector and driver, performed by the Plaintiff at a heavy exertional level. Id. at 43; 20 C.F.R. § 404.1565.

The ALJ then decided, considering Plaintiff's age, education, work experience, and RFC, there were jobs he could perform that existed in significant numbers in the national economy including rental clerk,[4] counter clerk,[5] and usher,[6] all at light exertion. Id. at 44; 20 C.F.R. §§ 404.1569, 404.1569a. Therefore, the ALJ found that Plaintiff was not disabled. R. 44-45; 20 C.F.R. § 404.1520(g).

Plaintiff argues remand is required because the ALJ did not sufficiently develop the record regarding Plaintiff's medical treatment, specifically his ketamine infusions, which could have resulted in a different outcome for this case. Doc. 8, at 3-6; Doc. 12, at 1-5. The Commissioner asserts that Plaintiff's claim the ALJ did not adequately develop the record is an impermissible attempt to shift the burden of proof to the ALJ, and the RFC is supported by substantial evidence in the record. Doc. 9, at 1-12.

---

[4] DOT No. 295.357-018, SVP 2.
[5] DOT No. 249.366-010, SVP 2.
[6] DOT No. 344-677.014, SVP 2.

## IV. FACTUAL BACKGROUND

Plaintiff was 43 years old on the AOD. Id. at 43, 83. He was therefore a "younger person" when he filed his DIB application. Id. at 83-84; 20 C.F.R. § 404.1563(c). He has a high school degree and two years of college. Id. at 44, 92, 552. Plaintiff worked as a sanitation worker for the City of New York for approximately twenty-one years before he stopped working in April 2021. Id. at 60, 92, 409, 552.

### A. Medical evidence[7]

On April 30, 2021, an initial examination of Plaintiff was conducted at JAG-ONE Physical Therapy, LLC-Newton. Id. at 545. Plaintiff presented with low back and bilateral shoulder pain. Id. at 547. Plaintiff was in a car accident in 2003. Id. at 545. He believed his work for the New York City sanitation department collecting trash required heavy lifting and repetitive bending also contributed to the pain. Id. An MRI revealed herniated discs at the cervical and lumbar regions. Id. Plaintiff experienced numbness and tingling down his legs from time to time. Id. He also has numbness in his hands, specifically from carpal tunnel, and right-side hip pain but had felt better since losing thirty pounds. Id. Plaintiff's primary complaint was left side radiating pain to his right lower extremity, cervical spine pain radiating down both upper extremities, bilateral shoulder pain more prominent on the right-hand side, and lower back pain when going from sitting to standing and going up and down stairs. Id. He also had shoulder pain with overhead lifting and reaching over his head/behind his back. Id. The

[7] I include only the medical evidence relevant to the issue Plaintiff raises on appeal and some other pertinent background information.

listed diagnoses were radiculopathy cervical region and lumbar region, sprain of left rotator cuff capsule, and sprain of right rotator cuff capsule. Id.

Plaintiff started in April 2021 with physical therapy ("PT") and continued it throughout 2021 and 2022. Id. at 37, 652-743. While there were some brief gaps in treatment, Plaintiff stated that PT improved his pain, especially in his hip. Id. at 37-38, 713, 717, 723, 731, 735, 743, 770, 774, 780, 782, 786, 800, 825, 885, 887, 895, 914, 932, 936, 982, 988, 997, 1003, 1009, 1011.

In August 2021, Dr. Billy Geris, M.D. ("Dr. Geris") completed a Medical Opinion Re: Ability to Do Physical Activities for Plaintiff. Id. at 455. The medical opinion provided Plaintiff underwent weekly IV infusion therapy and PT and his diagnoses included chronic pain syndrome and myofascial pain. Id. Dr. Geris found Plaintiff could walk 1-2 blocks without a rest and could sit for thirty (30) minutes continuously and stand for twenty (20) minutes continuously. Id. In an eight-hour workday, he could sit/stand for about two (2) hours. Id. Dr. Geris said Plaintiff would need constant breaks throughout the workday and needed to alternate positions. Id. Plaintiff also had to rest "indefinitely" before returning to work. Id. at 456. Dr. Geris noted for prolonged sitting Plaintiff's legs should be elevated 75-90 degrees for 50% of the workday. Id. He could frequently carry ten pounds and less than ten pounds, occasionally carry twenty pounds, and never carry more than fifty pounds. Id. Plaintiff could use his right hand 30% of the day to grasp, turn, and twist objects, and 40% of the day for his left hand, could use his right fingers 40% of the day for fine manipulation and 50% of the time for his left fingers, and could use his right arm 25% of the time for reaching (including overhead), and his left arm 35% of the time (including overhead). Id. Plaintiff could bend 10% of the time and twist 15% of the time.

Id. He could occasionally twist, stoop (bend), and climb stairs. Id. at 457. He could never crouch and climb ladders. Id. Dr. Geris opined Plaintiff would be absent from work more than twice a month. Id.

On November 10, 2021, Anne Greenberg, M.D., performed an internal medical consultative examination on Plaintiff for the Bureau of Disability Determination. Id. at 566. Plaintiff reported he was in his usual state of health until 9/11 and then worked as a New York City Police Department on "the pile" as clean-up crew for eight months. Id. He subsequently developed medical issues including a pre-cancerous lesion on his ear, gastroesophageal reflux disease, irritable bowel syndrome, gastroenteritis, asthma, sleep apnea, and hypertension. Id. Plaintiff took medication for his gastrointestinal disorders and used an inhaler for his asthma (but had never been hospitalized for it) and a CPAP machine. Id. He was trying to control his hypertension by losing weight. Id.

In 2003, Plaintiff, shortly after began working for the New York Sanitation Department, was hit by a garbage truck while driving a city car and developed cervical and lumbar pain. Id. Plaintiff treated with pain medications and then did both cervical and lumbar epidural steroid injections with minimal benefit. Id. Sometime in 2018, Plaintiff started treating with a doctor in Staten Island that provided IV ketamine treatments for chronic pain syndromes. Id. Plaintiff also received nasal ketamine daily. Id. While Plaintiff had constant neck and lower back pain that was a 9.5/10, the ketamine treatments have decreased it to an 8.5/10, and during the treatments, the pain was reduced to a 6/10. Id. at 566-67. Plaintiff also described lower back pain radiating to below the knee on the right and to the knee on the left. Id. at 567. His lower back pain was worse with prolonged or repetitive sitting, standing, walking, bending, lifting,

carrying, and twisting. Id. Plaintiff's neck pain radiated to both shoulders—right greater than left—and he developed symptoms of bilateral carpal tunnel syndrome after the car accident. Id. Plaintiff's entire left hand and the first through fourth fingers of the right hand were affected. Id.

On physical exam, Plaintiff was in no acute distress; his gait was mildly wide-based with normal cadence and length of stride. Id. at 568. He had difficulty walking on heels and toes secondary to lower back pain and right lower-extremity pain. Id. Plaintiff's squat was 60% while he held onto furniture. Id. Plaintiff was able to get on and off the exam table without help and could rise from the chair without difficulty. Id. Plaintiff's straight leg raise was negative, but elevating his right leg elicited lower back pain with radiation to the right leg of 30 degrees of elevation. Id. at 569. Plaintiff had 5/5 strength in his upper left extremity, 4/5 in his lower left except 5/5 at the foot, 4/5 strength in his right upper extremity, 5/5 in the right lower extremity at the ankle, 4/5 at the hip and the knee, and his grip strength was full on the left and 4+/5 on the right. Id. His hand and finger dexterity was intact. Id. Plaintiff was able to zip, button, and tie. Id. An x-ray of Plaintiff's lumbar spine showed degenerative change, moderate at T10-11, and mild at L1-L4. Id. at 570. On x-ray, no acute fracture or dislocation was found in Plaintiff's right shoulder. Id.

The Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("MSS") Dr. Greenberg completed found Plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and could occasionally carry up to ten pounds. Id. at 571. Plaintiff could without interruption sit for an hour at a time, stand for thirty minutes at a time, and could walk for fifteen minutes at a time. Id. at 572. He could sit for eight hours a day, stand for four, and walk for three. Id. He did not need a cane for ambulation. Id. With his right hand,

Plaintiff could never reach overhead, could occasionally reach in all other directions, and could occasionally handle, finger, and feel. Id. at 573. With his left hand, Plaintiff could occasionally reach overhead and in all other directions, could continuously handle, finger, and feel and could frequently push/pull. Id. Plaintiff could never use his right foot to operate foot controls and could occasionally use his left foot to operate foot controls. Id. Finally, Dr. Greenberg found he could never climb ladders or scaffolds, kneel, or crawl, could occasionally stoop and crouch, and frequently balance. Id. at 574.

On December 29, 2021, Dr. Greenberg completed a supplemental report that included a pulmonary function study. Id. at 592. The findings were largely the same except the supplemental report noted Plaintiff's probable restriction pre- and post-bronchodilator. Id. at 38, 592. The report also noted "significantly diminished air flow" throughout Plaintiff's lungs, especially in the upper lobes. Id. at 591. Plaintiff's listed medications included IV ketamine infusions 100 mg weekly, omeprazole every day (20 mg), albuterol sulfate (90 mg), famotidine every other day (40 mg), and nasal ketamine (150 mg), weekly. Id. at 589-90. No acute findings were shown on the x-ray of Plaintiff's cervical spine. Id. at 592. In the updated MSS, Dr. Greenberg found Plaintiff could lift and carry up to ten pounds frequently and lift and carry up to twenty pounds occasionally.[8] Id. at 594-99. Plaintiff could sit for an hour at a time, stand for thirty minutes, and walk for fifteen. Id. at 595.

On March 29, 2022, Plaintiff saw Claudia Geris, PA,[9] for his right shoulder pain. Id. at 38, 948. He reported ongoing shoulder pain for a while, rating the pain as a 10 when he was

[8] The ALJ noted this was the only change from those limitations Dr. Greenberg found during the November 2021 exam, which suggested an error in the first report. R. 42.

[9] It is unclear if Claudia Geris and Dr. Geris are related in any way. R. 38.

active and a 7 when at rest. Id. at 948. Plaintiff was directed to get an MRI. Id. at 951. On exam, he had tenderness at the posterior shoulder, tenderness and spasm of the trapezius, and strength of the shoulder was 5-/5 for forward flexion, abduction, external rotation, and internal rotation. Id. at 950. Plaintiff's shoulder apprehension showed to be positive, impingement testing was positive, Hawkin's testing was positive, Jobe test was positive, and Speed's test was negative. Id. He also had bilateral trapezial spasm and bilateral trapezial tenderness and bilateral paracervical tenderness in his cervical spine, along with limited range of motion. Id. His right tricep had 5-/5 strength and right grasp was 4+/5. Id. Plaintiff was also positive for right Spurling test. Id.

On April 19, 2022, Plaintiff saw Dr. Geris again for bilateral shoulder pain and low back pain. Id. at 762. Dr. Geris referred Plaintiff to PT for his right shoulder and his lumbar spine 2-3 times a week for 6-8 weeks. Id. at 763. An April 26, 2022 exam with Dr. Geris revealed decreased range of motion in some areas of his cervical spine, shoulders, and lumbar spine. Id. at 706-07. Plaintiff also reported increased pain when Dr. Geris tested the strength of his shoulders bilaterally and his hip and knee strength. Id. at 707.

An MRI of Plaintiff's right shoulder without contrast on April 27, 2022 showed low to mid-grade partial thickness insertional tears involving both the supraspinatus and infraspinatus insertion (rotator cuff tear) and a nondisplaced labral tear. Id. at 946, 952. An EMG/NCV Report taken a few days later demonstrated compression of the left median nerve at the wrist, consistent with very mild left carpal tunnel syndrome. Id. at 953.

On May 3, 2022, Alexander H. Tejani, M.D., examined Plaintiff, and after discussing the MRI results, Plaintiff underwent a lidocaine injection to his right shoulder. Id. at 946. On July

12, 2022, Plaintiff followed up with Dr. Tejani, reporting no improvement from the injection. Id. at 963. They decided to proceed with surgery. Id. PT notes, however, from July 18, 2022 provided Plaintiff was still unsure whether he wanted to have shoulder surgery. Id. at 995.

The most recent PT records from November 2022 indicate Plaintiff could complete his PT exercises without exacerbation, showed improvement in body mechanics, and continued to address his impairments to reach his max level of function. Id. at 1127. Plaintiff continued to have some aching in the lower back and right shoulder was giving him some pain. Id. at 1127, 1129, 1131.

**B. Non-medical evidence**

Plaintiff lives in a house with his wife and his children, who are fourteen, eleven, and five. Id. at 71. He cannot take care of activities of daily living such as cooking, cleaning, shopping, and laundry. Id. However, Plaintiff can shower himself and does not need help getting dressed. Id. at 72.

At the hearing, Plaintiff testified he left his New York City job because he could not physically do the job anymore. Id. at 63. He said his body was "just shot," including his back, shoulder, and neck, and he also has trouble breathing. Id. His lower back has a dull, throbbing pressure that never leaves, he can barely lift his right shoulder and his neck swells up if he is driving too long. Id. at 64. For pain management, Plaintiff has been receiving weekly ketamine infusions for about two years. Id. Plaintiff testified "they take the edge off for a little bit," however, "it doesn't stop the pain." Id. at 65. When the ALJ asked Plaintiff's counsel about the records regarding the ketamine treatment (because she saw them noted but not in the record), Plaintiff's counsel made an offer of proof that they would show Plaintiff has been receiving

weekly IV infusions and "the normal pain management that you would normal[ly] see from practitioners." Id. at 62.

Plaintiff testified that his doctor told him he could have surgery on his upper right extremity, but it was not guaranteed to work, and it could actually get worse. Id. at 65. Therefore, Plaintiff continued to go to PT, hoping it got better, and because he was afraid of surgery. Id. Regarding Plaintiff's breathing, he has been coughing since 9/11, and his breathing has not been the same since he spent eight months at Ground Zero. Id. at 66. At times, Plaintiff drops stuff if he has a coughing fit or during allergy seasons, it "just intensif[ies] everything." Id. Plaintiff can stand and sit without changing positions for 20-30 minutes, can walk a city block, but cannot lift more than a gallon of milk. Id. at 67. When he reaches for something with his right arm, his arm will give out, "almost like a buckle" and he has trouble reaching to the front and above. Id. at 67-68. His left arm is not as bad, but Plaintiff still cannot reach overhead. Id. at 69.

Plaintiff was not taking any psychiatric medications from medical providers. Id. He testified the ketamine treatment caused hallucinations, time delay, sensory functions, and hearing. Id. Each infusion takes about two hours, and he is "loopy" for the rest of the day. Id. at 70. As an example, he said if the ketamine infusion finished at 2 p.m., at 10 p.m. that night "it's not as intense, but . . . colors will seem very vibrant." Id.

## V. DISCUSSION

### A. The ALJ sufficiently developed the record regarding Plaintiff's medical treatment, and the decision is supported by substantial evidence.

Generally, the ALJ has an affirmative obligation to help the claimant develop the facts. See Hummel v. Heckler, 736 F.2d 91, 95 (3d Cir. 1984) (citations omitted). This duty

encompasses developing arguments both for and against granting benefits to the claimant. See Sims v. Apfel, 530 U.S. 103, 111 (2000) (citation omitted); see also Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (ALJ's role of developing full and fair record includes "secur[ing] relevant information regarding a claimant's entitlement to social security benefits.") (citing Hess v. Sec. of Health, Ed. & Welfare, 497 F.2d 837, 841 (3d Cir. 1974)). While the ALJ has a general duty to develop the record, "[t]he burden lies with the claimant to develop the record regarding . . . [his] disability because the claimant is in a better position to provide information about . . . [his] own medical condition." Wert v. Comm'r of Soc. Sec., Civ. Act. No. 13-5705, 2015 WL 1808594, at *12 (E.D. Pa. Apr. 21, 2015) (citing Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) (additional citations omitted); 20 C.F.R. § 404.1512(a)(1). When counsel represents a claimant, it is presumed counsel has made the best case before the ALJ. Vivaritas v. Comm'r of Soc. Sec., 264 F. App'x 155, 158 (3d Cir. 2008) (quotations omitted). Furthermore, "[t]he onus is . . . on counsel to ensure that the ALJ is aware of all evidence favorable to a claimant's case and to probe all of the relevant issues." Harrison v. Colvin, No. 2:14-cv-00719-TFM, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14, 2014) (citations omitted).

Unlike cases when the claimant is pro se, the ALJ is under no enhanced duty to develop the record when counsel represents the claimant at the ALJ hearing. See Turby v. Barnhart, 54 F. App'x 118, 122 (3d Cir. 2002); but see Kulik v. Kijakazi, CIV. ACT. NO. 20-2344, 2022 WL 580454, at *6 (E.D. Pa. Feb. 24, 2022) (stating if "claimant is pro se at administrative hearing the ALJ must assume a more active role in developing the evidentiary record and must do so with

special care") (citations omitted).[10] The ALJ need not "search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government." Hess, 497 F.2d at 840. The plaintiff must show the ALJ failed to adequately develop the record in the proceedings below. See e.g., Lemon v Colvin, Civ. Act. No. 14-562, 2015 WL 418430, at *2 (W.D. Pa. Feb. 2, 2015) (concluding plaintiff failed to satisfy burden when counsel never asked ALJ to keep record open to introduce 43 missing treatment notes from psychological practice so doctor's report as administrative record and counsel represented he had no additional evidence to submit); Salazar v. Colvin, Civ. Act. No. 12-6170, 2014 WL 6633217, at *4 (E.D. Pa. Nov. 24, 2014).

Even if the ALJ errs when developing the factual record, the plaintiff must show clear evidence of prejudice from this error for relief. See Herring v. Colvin, 181 F. Supp. 3d 258, 268 (M.D. Pa. 2014) (stating remand based on failure to develop record is only warranted when lack of counsel prejudiced claimant or administrative proceedings were marked by unfairness because of lack of counsel); Isaac v. Astrue, CIV. Act. No. 08-1661, 2009 WL 1492277, at *11 (W.D. Pa. May 28, 2009) ("essential inquiry is whether the incomplete record reveals evidentiary gaps which result in prejudice to the claimant.") (citations and internal quotations omitted).

---

[10] While the Supreme Court said the ALJ has a duty to investigate facts and develop arguments for and against benefits in Sims v. Apfel, 530 U.S. 103, 111 (2000), that portion of the Supreme Court opinion is not precedential as it was joined by only three other members of the Court. See Poleck v. Astrue, Civ. Act. No. 09-291, 2009 WL 3738602, at *2 (E.D. Pa. Nov. 9, 2009). Importantly, the Third Circuit "has never formally imposed a broad duty to investigate and develop arguments for all parties." Jones o/b/o E.D. v. Kijakazi, Civ. No. 1:12-CV-2133, 2022 WL 17660974, at *10 (M.D. Pa. Nov. 8, 2022) (quoting Poleck, 2019 WL 3738602, at *2) (citation omitted). But the ALJ must exhibit a heightened level of care and responsibility when the claimant does not have counsel. See Dobrowolsky, 606 F.2d at 407.

The ALJ must "'explicitly weigh[ ] all the [competent] evidence.'" Ray v. Astrue, 649 F. Supp. 2d 391, 401 (E.D. Pa. 2009) (quoting Dobrowolsky, 606 F.2d at 406-07 (additional citations omitted). If a claimant does not provide required medical evidence, the ALJ "will have to make a decision based on the information available in [the claimant's] case." 20 C.F.R. § 404.1516. Generally, the Court, when considering any issues the plaintiff raises on appeal, will review only the evidence submitted to the ALJ. See Bruni v. Astrue, 773 F. Supp. 2d 460, 473 (D. Del. 2011) (citing Matthews v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001)).

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a)(1). The RFC is based on all the relevant and other evidence in the case record. Id. § 404.1545(a)(3). It is the ALJ's exclusive responsibility to determine the claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ must include in the RFC any credibly established limitations the record supports. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007). Once an ALJ has made an RFC determination it will not be set aside provided substantial evidence supports the RFC. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

Plaintiff asks to remand the case because the ALJ did not sufficiently develop the evidence regarding Plaintiff's medical treatment, specifically his weekly ketamine treatments and associated side effects. Doc. 8, at 3-6. Plaintiff asserts that even though the ALJ found Plaintiff's testimony about his weekly ketamine injections "compelling," the ALJ rejected the testimony because there were no reports to verify the limitations Plaintiff testified he was experiencing. Doc. 8, at 3. Defendant argues the ALJ did not have to disprove or include

limitations that were not found in the record evidence, and the record supported the ALJ's decision that Plaintiff was capable of light work. Doc. 9, at 5-12.

At the hearing at which Mr. Babbitt represented Plaintiff, Plaintiff testified about his ketamine infusions:

> **ALJ**: From the medications you're taking on a regular basis, what side effects, if any, are you experiencing?
>
> **Plaintiff**: Well, the most dramatic I guess would be with the ketamine. That does cause hallucinations. Time delay, sensory functions and hearing.
>
> **ALJ:** And how long does that last after each infusion?
>
> **Plaintiff**: Well, the infusions, it's a while. It's an IV bag full. But he also prescribes me a nasal medicine that I use daily. I could just take that myself. It's not as potent as the IV, but I can't get an IV every day. And to me, to settle down and go to sleep, I usually take a couple shots of it in my nose, or achy back in the morning. But it -- I wouldn't drive, I wouldn't do anything of the sort if I do that, because it's not -- it wouldn't be safe.
>
> **ALJ**: Okay. So when you have an infusion, how long does it take to get each infusion?
>
> **Plaintiff**: Two hours.
>
> **ALJ**: And the side effects you just described, how long do they last after the infusion?
>
> **Plaintiff**: I would be loopy the rest of the day, I would say. So if I get it -- let's say I finish --

**ALJ**: Okay.

**Plaintiff**: -- at 2:00 p.m., at 10:00 at night, Your Honor, I'm still -- it's not as intense, but you know, colors will seem very vibrant.

R. 69-70.

Before she questioned Plaintiff, the ALJ asked Mr. Babbitt if the record was complete. Id. at 56. Mr. Babbitt informed the ALJ that they were just waiting for the treatment records from Dr. Geris regarding Plaintiff's ketamine treatments. Id. at 56, 326, 346. At the hearing, the ALJ offered to keep the record open for an additional thirty (30) days to obtain the records and asked Mr. Babbitt if that would be sufficient. Id. at 56. Mr. Babbitt replied that it should be more than sufficient. Id. A November 22, 2022 letter indicated that the documents from Dr. Geris had not been obtained or submitted to the ALJ, but his office continued to pursue the evidence. Id. at 352. Subsequently, by letter dated November 23, 2022, Mr. Babbitt informed the ALJ that the "records outstanding at the time of the hearing ha[d] been submitted," and he requested a decision be issued. Id. at 354.

The treatment records regarding the side effects of the ketamine treatment were never provided to the ALJ. Id. at 39. The ALJ found in her decision that while Plaintiff testified "compellingly to regular, time-consuming ketamine injections resulting in negative side effects," there was no mention of infusions anywhere in the record. Id. at 39. Records from Dr. Geris were not submitted, even though those records were identified at the hearing, and Mr. Babbitt did not seek any additional time to submit them and instead asked the ALJ to issue a decision on benefits. Id. at 39, 56-57, 326, 346, 352, 354. The ALJ found because the records from Dr. Geris were not in evidence she was "unable to determine whether Dr. Geris's opinion is

supported by his underlying treatment records," despite believing the treatments took place. Id. at 40.

Plaintiff's argument that the ALJ should have obtained Dr. Geris's reports and records about Plaintiff's ketamine treatment is meritless. The ALJ took steps to obtain the records regarding Plaintiff's ketamine treatment. The ALJ inquired about the outstanding records at the hearing, left the record open for thirty (30) days when the hearing concluded so Mr. Babbitt could introduce the documents into the record, and only rendered a decision after Mr. Babbitt affirmatively represented to the ALJ that the record was complete and for the ALJ to decide the case. Id. at 56, 354. The ALJ honored its obligation to develop the facts in this case by working with Mr. Babbitt and allowing him extra time to produce the treatment records, which he never produced. See, e.g., Sims, 530 U.S. at 111; Hummel, 736 F.2d at 95. Furthermore, Plaintiff did not represent himself at the hearing; therefore, the ALJ had no enhanced duty to help him develop the record. See Reefer, 326 F.3d at 380; Kulik, 2022 WL 580454, at *6. Here, as indicated at the hearing and in his letters, Mr. Babbitt was well-aware the outstanding records related to Plaintiff's ketamine treatment were not part of the record, he represented he was going to obtain them, but for whatever reason he did not. R. 56. Plaintiff cannot blame the ALJ when counsel was the one who failed to produce the records to the ALJ—despite the award of additional time to produce them. See, e.g., Turby, 54 F. App'x at 122-23; Hess, 497 F.2d at 840-41 (stating ALJ need not seek out all relevant evidence that might be available since it would turn burden of proof to government, not plaintiff, to prove disability, but recognizing ALJ must help obtain relevant medical evidence to protect rights of unrepresented claimant).

Dr. Geris's MSS says that Plaintiff undergoes "[w]eekly IV infusion therapy," but does not include any specifics about the effects of Plaintiff's ketamine treatment. Id. at 455-57. The only mention of side effects is Plaintiff's testimony regarding his symptoms. Although the ALJ found Plaintiff's testimony "compelling," the ALJ found no objective evidence in the record to support these side effects. See Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017) (individual will not be found disabled based on alleged symptoms alone); 20 C.F.R. § 404.1520c(c)(2) (stating when determining persuasiveness of opinion ALJ considers consistency of medical opinion which is extent opinion is supported by relevant objective evidence in the record); Cota v. Kijakazi, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022) (noting the more consistent medical opinion is with evidence from other medical and non-medical sources the more persuasive it will be). Therefore, the record supports the ALJ's decision that Plaintiff was not disabled.

Additionally, Plaintiff had been receiving ketamine treatment well before he left his heaving lifting job in New York City. Id. at 92, 409, 552, 566-67. This calls into doubt the debilitating effects of the treatment and his inability to do light work as set forth in the ALJ's RFC. Id. at 36, 44. Thus, Plaintiff's testimony about the effects of the ketamine treatment is certainly not "uncontroverted" as Plaintiff contends. Doc. 8, at 6; Doc. 9, at 8.

Finally, when the ALJ asked Mr. Babbitt for an offer of proof as to what the outstanding records would show "vis a vis" the ketamine treatment, Mr. Babbitt responded that Plaintiff was receiving pain management at Dr. Geris's practice, it showed his weekly IV infusions, and "the normal pain management that you would see from practitioners." R. 62; Doc. 9, at 6. Mr.

Babbitt did not mention the missing medical records would show any debilitating side effects supporting Plaintiff's testimony. Therefore, even if the ALJ erred when she did not seek out herself additional documents regarding Plaintiff's ketamine treatment (if any exist), Plaintiff cannot show failing to admit these documents into evidence caused him prejudice needed for relief. See Herring, 181 F. Supp. 3d at 268-69, 273 (stating prejudice is required to grant remand based on inadequate development of the record) (citations omitted).

Plaintiff's RFC is supported by substantial evidence in the record. The ALJ accounted for Plaintiff's limitations when she devised an RFC of light work with additional limitations for Plaintiff's decreased strength in his upper and lower extremities. R. 36, 41-42; 591, 593-99. She generally adopted Dr. Greenberg's restrictions, finding Plaintiff needed postural, manipulative, and environmental restrictions, and modified the recommended restrictions when she found Plaintiff could frequently climb stairs and ramps, and crouch.[11] R. 42. The ALJ also explained how those limitations were supported and consistent with the other evidence in the record. R. 42, 707, 711, 823-24; see 20 C.F.R. § 404.1520c(b)(2). In addition, the ALJ cites that Plaintiff was improving with PT. See, e.g., 39, 713, 717, 723, 731, 735, 743, 770, 774, 780, 782, 786, 800, 825, 885, 887, 895, 914, 932, 936, 982, 988, 997, 1003, 1009, 1011. For these reasons, substantial evidence supports the RFC.

[11] Plaintiff complains the ALJ did not give Dr. Geris's opinion the "benefit of the doubt," but she explained—when finding the opinion was not persuasive and analyzing the consistency of Dr. Geris's opinion—that his opinion was internally inconsistent. R. 40. The ALJ pointed out that Dr. Geris found Plaintiff should elevate his legs 50% of the day when performing sedentary work but placed him at the light exertional level for lifting/carrying restrictions, and found Plaintiff had to alternate positions. Id.

## VI. CONCLUSION

The ALJ sufficiently developed the record in this case, and Plaintiff's RFC is supported by substantial evidence. Accordingly, Plaintiff's request for review (Doc. 8) is **DENIED**. An appropriate order accompanies this opinion.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge